# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-00001-04-CR-W-DGK |
| DAWN LOUISE BRANSTIETTER, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Bruce Rhoades, Assistant United States Attorney, and the defendant, DAWN LOUISE BRANSTIETTER ("the defendant"), represented by Brady D. Wimer.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to **Count Two** of the indictment charging the defendant with a violation of 18 U.S.C. §§ 752(a), that is, aid or assist escape from confinement.

By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

After arrests on federal felony warrants, and because of jury trial convictions and guilty pleas to various felony charges contained within several Western District of Missouri (WDMO) Federal Grand Jury indictments and various orders of WDMO Federal District Court Judge D. Greg Kays, Trevor Scott Sparks and Sergio Perez Martinez were confined in the Cass County, Missouri, Jail on multiple federal felonies. This facility is within the WDMO.

The Federal Bureau of Investigation (FBI), United States Marshals Service (USMS), Kansas City, Missouri, Police Department (KCMOPD), and various other entities, began investigating the escape of Sparks and Martinez from the Cass County Jail on or about December 5, 2022. On December 6, 2022, the United States Marshals Service for the WDMO, Kansas City office, was notified by Cass County, Missouri, that Sparks escaped from confinement and was seen leaving the facility at 10:22 p.m. on December 5, 2022. It was later determined that Sparks and Martinez, another inmate in the Cass County facility, escaped through subterfuge and damage to the facility from the Cass County Jail and fled east outside the jail into the surrounding rural community that is still within the WDMO.

In reviewing jail phone calls made from both Sparks' and Perez Martinez's jail phone accounts, investigators determined that on November 30, 2022, at approximately 2:34 pm, Sparks spoke to Defendant Dawn Louise **Branstietter**, his mother, using 816-655-1071 on a jail-call. Sparks said, "Make sure you keep some gas in that mother fucking car." He then continued, "Because you are probably going to pick me up real soon. Real real real soon." **Branstietter** responded, "Don't you think they are going to be watching out for them kids." Sparks said he was just calling to make sure she was going to answer. Sparks said, "these things are not safe," and they could talk later.

On December 1, 2022, at approximately 3:46 pm, Sparks called **Branstietter** using 816-655-1071 on a jail call. They talked about how the "kids" got all their clothes stolen and Sparks got upset the clothes would "stand out." Sparks and **Branstietter** were using "kids" as code for when Sparks would be ready to escape. **Branstietter** said worst case she would buy two new outfits when she gets paid. Sparks said, "it will definitely be done before your check." "It" meant his escape. Sparks said he wanted a T-shirt, sweatpants, and a pair of shoes. Sparks expressed concern when he called that **Branstietter** will not have gas for the car. **Branstietter** assured Sparks that they will have gas as they have gas gift cards. The car was needed to pick up Sparks after he escaped.

On December 1, 2022, at approximately 6:02 pm, Sparks called **Branstietter** on 816-655-1071 on a jail call. **Branstietter** said she got that issue resolved as she called "Reno." "Reno" and "Pops" are nicknames for Co-Defendant Steven Williams, Sr.

On December 2, 2022, at approximately 5:53 pm, Sparks spoke with **Branstietter** on phone number 816-655-1071 on a jail call. Sparks said, "Just be ready whenever alright." **Branstietter** replied, "Ok honey. Hey when you are ready just tell me to go pick up Dalton."

2

Sparks went on to say, "Yeah. I ain't going to lie to you it makes me kind of nervous, can anybody else hear me," and "Because it kind of makes me nervous when he's like you are at work and at this that and the other I don't know if I trust anybody else." Again, this was Sparks and the defendant making plans for the defendant to pick up Sparks after he escaped.

On December 4, 2022, between approximately 3:46 pm and 9:36 pm, there were four outgoing phone calls where Sparks asked Co-Defendant Williams to get in touch with **Branstietter** as she was not answering the phone. Sparks needed to talk with his mother and stressed it was important. On the last phone call Sparks said he was trying to send her money and urged Williams to get in touch with her.

On December 5, 2022, at approximately 10:19 am, Sparks asked Williams if "everything was legal" on his car. Williams said yes that he knows of then changes his answer to say the vehicle tags are expired and the call ended. Sparks was recruiting Williams to pick him up after the escape due to **Branstietter** not answering her phone.

On December 5, 2022, at approximately 8:00 pm, Sparks told Williams to come to Casey's General Store on West Mechanic Street in Harrisonville, Missouri. This business can be seen from the Cass County Jail and vice versa. Over the next few hours, Sparks and Williams coordinate Williams picking up Sparks because the defendant was not answering her phone. It was later learned the defendant's phone was not operational during this time.

Williams confirmed he needed to be at Casey's on West Mechanic Street in Harrisonville. Sparks told Williams for a third time to be there and not to leave. Williams said, "alright Nephew" and Sparks said, "alright Pops." Williams is known as "Pops" and Sparks is known as "Nephew."

Subsequent video surveillance put Williams, Sparks, and Martinez together in Williams's vehicle, both in Harrisonville and later in Kansas City. All of that was within the WDMO.

Calls made from the Cass County Jail have a repeating recording at the beginning of all calls and throughout all calls that the calls are originating from a correctional facility and are being recorded. Based on that, the nature of the calls, the time and nature of her contact with Sparks, the fact she was present during Sparks' trial, and being Sparks' mother, **Branstietter** knew Sparks was in custody, had been convicted at trial of various felony charges resulting in a long potential incarceration sentence, and was not and would not be anytime soon legally out of custody.

On December 6, 2022, physical surveillance followed **Branstietter** and an unknown male from 605 SW 13th Street, Blue Springs, Missouri to the Williams's residence at 6138 Citadel Drive, Apartment 205, Kansas City, Missouri. After not being able to get into the 6138 Citadel Drive location, **Branstietter** and the unknown male departed and then went to the Metro PCS Store (T-Mobile) at 9319 E. State Route 350, Raytown, Missouri, arriving at approximately 4:00 pm. **Branstietter** went in and purchased a phone under Co-Defendant John Baxter's account. Baxter is her husband. This account is associated to the address 605 SW 13th Street, Blue Springs, Missouri, phone number 816-469-0354. **Branstietter** purchased one month of phone service. T-Mobile also provided service to (816) 655-1071.

3

On December 9, 2022, **Branstietter** was interviewed at her residence at 605 SW 13th Street, Blue Springs, Missouri. **Branstietter** indicated she would not give up her son and would go to prison so he could be free. **Branstietter's** husband, John Baxter, was also at the residence and was not cooperative with law enforcement. The residence was cleared for persons and no other individuals were located.

During the investigation into the escape, investigators obtained a search warrant for **Branstietter's** Facebook account. During review of the content from **Branstietter's** Facebook account, investigators located an additional account of interest that used the name of Co-Defendant Nicholas Parris, an account that is used by Co-Defendant Parris.

There was only one contact between **Branstietter's** account and Parris's account between November 1, 2022, and the escape of Sparks on or about December 5th. On November 29, 2022, at approximately 10:21 pm, the Parris account sent **Branstietter's** account a link to a McDonalds voucher. Within days of the escape, communication between these two accounts grew exponentially in frequency. The messages were cryptic, vague, or directed to voice or video communication. Beginning on December 7, 2022, at 7:15 pm and through December 15, 2022, 40 communication transactions (attempted and completed) occurred between these two accounts, some of which are outlined below. Parris and the defendant were discussing Sparks and his escape. The defendant was communicating with Sparks through Parris using the "Nicholas Parris" account.

On December 8, 2022, "Dawn Sparks" tells "Nicholas Parris," "Let's leave and go to Texas" followed by "I'm for real never more serious than I am right now."

Later that same day, "Nicholas Parris" stated, "Been wondering. I suppose i will do the damned right same then. Been fucking roaming the street, waiting for you to get off work ,so i guess my phone was dead, or i didn't hear it. idk."

**Branstietter's** daughter (Sparks' sister) lives in Texas. Parris and the sister used to date.

On December 9, 2022, at approximately 1:51 pm, "Dawn Sparks" told "'Nicholas Parris" that "The FBI just left the house." This was a warning to both Parris and Sparks.

On December 17, 2022, investigators obtained a search warrant for Parris's Facebook account. During a review of the content, investigators located one additional message from **Branstietter's** account to Parris's account. The message was sent on December 16, 2022, at 04:54:10 UTC where "Dawn Sparks" wrote, "Im not going to make it tonight to much going on."

Investigators also obtained pen registers on the **Branstietter** and Parris Facebook accounts which revealed an additional message was sent from the Parris account to the **Branstietter** account on December 18, 2022, at 01:18:36 UTC. Since defendant's arrest, additional Facebook information from the "Dawn Sparks" and the "Nicholas Parris" account have been obtained.

4

A review of the content from the **Branstietter** ("Dawn Sparks") Facebook account also showed that the account user began searching the names of Trevor Sparks' associates through Facebook beginning on December 6, 2022, at 5:50 pm.

On December 7, 2022, at approximately 12:10 pm, the user of this "Dawn Sparks" account posted, in part: "The FEDS PICKED UP RENO AND LIL STEVIE AND THEY ARE SAYING THAT THEY DROPPED THEM OFF AT HER PLACE".

On December 10, 2022, at approximately 12:45 am, the user of this account posted an excerpt of what appears to be the affidavit to support the criminal complaint against Steven Williams. These were all to keep Parris and Sparks informed of the status of the investigation. Parris knew Sparks was an escapee.

The Parris residence address of 424 Olive Street was consistent with the location data obtained from Parris's Facebook account. This is also consistent with the Parris Facebook account providing the same address on December 17, 2022, to a Facebook friend. The friend was going to pick up Parris at that residence. This residence is also in the same area as where Sparks operated his Drug Trafficking Organization. It is also in the same area of where Co-Defendant Williams said he dropped off Sparks after the escape.

On December 30, 2022, at approximately 10:16 am, an individual, later identified as Sparks, was observed exiting a horse type trailer or detached garage located in the rear yard of 200 SW 8th Street, Blue Springs, Missouri. Through physical surveillance, investigators learned that the residence and outbuildings were known to be frequented by both **Branstietter** and Baxter over the last several days before the 30th. The owner and occupant of the residence is a relative of **Branstietter's** husband, Co-Defendant John Baxter. Sparks got into Baxter's vehicle, and it departed the residence.

A short time later, the vehicle was observed at Parris's residence at 424 Olive Street, Kansas City, Missouri. The driver was Sparks. **Branstietter** got out of the passenger side of Baxter's vehicle and walked up to the front door of the residence. A few minutes later, Parris exited the residence, and **Branstietter** and Parris walked back to the passenger side of the vehicle. Parris got into the front passenger seat and **Branstietter** got into the rear passenger seat. At approximately 11:15 am, Sparks was taken into custody, along with **Branstietter** and Parris, while all three were outside 424 Olive Street. The vehicle was packed for the trip to Texas.

Additional evidence exists that may further implicate the defendant in these crimes. The defendant acknowledges that evidence was provided to defendant's attorney via discovery and the defendant has had an opportunity to review all the discovery with the attorney prior to signing this plea agreement and further acknowledges that evidence, and any additional evidence obtained prior to sentencing, may affect the ultimately determined criminal responsibility level, enhancements, and ultimate sentence of the defendant.

The parties have agreed to an offense level *not less than* a level 13. However, it is understood by the parties that the pre-sentence investigation report (PSIR / PSR), or the Court at sentencing, could assess a higher level of responsibility, and enhancements or reductions, for the

defendant, based on the evidence in the case to date or that becomes known before sentencing. If a higher level or enhancements or reductions are recommended by the pre-sentence investigation or found by the Court at sentencing, the parties are free to express their respective positions about that higher level or those enhancements or reductions at sentencing or in the PSR. However, the parties all agree that any necessary witnesses to support such positions will be limited to case agents, and the parties agree they will not require other witnesses to support such.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands, and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement, and other facts admitted during the plea hearing, will be used for the purpose of determining defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands, and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which defendant is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon pleading guilty to **Count Two** of the indictment charging the defendant with a violation of 18 U.S.C. § 752 (a), that is, aide or assist escape from confinement, the maximum penalty the Court may impose is not more than five years imprisonment and not more than a $250,000.00 fine. In addition, that the Court shall impose not more than three (3) years of supervised release and this offense is a Class D felony.

The defendant understands that for each count of conviction the Court shall impose a $100 mandatory special assessment, which must be paid in full *prior* to sentencing in this case. Failure to *timely* pay said assessment could result in the Government seeking a continuance of the sentencing until it is paid OR, in the alternative, the Government can consider the failure to timely pay it as a violation of this plea agreement and seek to have this agreement voided.

6

6. **Sentencing Procedures.** The defendant acknowledges, understands, and agrees to the following:

   a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, and may impose any multiple sentences concurrently or consecutively;

   b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c. in addition to a sentence of imprisonment, the Court shall impose a term of supervised release of not more than three (3) years;

   d. if the defendant violates a condition of supervised release, the Court may revoke that supervised release and impose an additional period of imprisonment without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release;

   e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range and the Court may impose multiple sentences concurrently or consecutively;

   f. any sentence of imprisonment imposed by the Court will not allow for parole;

   g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

   h. the defendant may not withdraw this guilty plea solely because of the nature or length of the sentence imposed by the Court;

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the charges defendant has pled to herein for which it has venue and which arose out of the defendant's conduct described above, except as set out herein and in paragraph 15 below.

The defendant understands that the United States' agreement to forego prosecution of additional criminal offenses with which the defendant might be charged are based solely on the promises made by the defendant in this agreement and the limitations set out herein, including those in paragraph 15 below. If the defendant breaches any of the terms of this plea agreement, at any time after signing it, including after sentencing, the United States retains the right to proceed with the original charges and any other applicable criminal violations. The defendant expressly waives any right to challenge the initiation of the reduced, dismissed, or additional charges against defendant if defendant breaches this agreement. The defendant expressly waives any right to assert a statute of limitations defense if the reduced, dismissed, or additional charges are initiated against defendant following defendant's violation of any of the terms of this plea agreement. The defendant further understands and agrees that if the Government elects to pursue said charges against defendant following breach of this plea agreement, defendant will not be allowed to withdraw this guilty plea.

The defendant further understands that nothing in this plea agreement prevents any prosecution for any act of violence or commission of a sex crime or an attempted violent or sex crime act or a conspiracy to commit any violent or sex crime act. This plea agreement also does not prevent prosecution of any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge at the time this plea agreement is signed. The defendant understands and agrees that if the Government files charges against defendant pursuant to one of these exceptions, defendant will not be allowed to withdraw this guilty plea.

8

Case 4:23-cr-00001-DGK   Document 83   Filed 04/20/23   Page 8 of 18

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which defendant has pleaded guilty.

The United States may respond to comments made or positions taken by the defendant, defendant's counsel, or anyone on defendant's behalf and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the defendant's guilty plea is entered, the defendant may only withdraw the plea of guilty if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant further understands that if the Court accepts defendant's plea of guilty and this plea agreement and subsequently imposes any legal sentence that is outside the defendant's applicable Sentencing Guidelines range or a sentence that the defendant does not expect, like, or agree with, that will not permit defendant to withdraw these pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature; the Court may impose a sentence that is within, above, or below the defendant's ultimately determined Guidelines range; the Court may impose any multiple sentences to be served concurrently or consecutively.

    b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2P1.1, which provides for *not less than* a base offense level 13, but the parties reserve the right to address at sentencing the pre-sentence or Court determined offense level.

    c. The parties recognize there might be specific aggravating or mitigating U.S.S.G. applications applicable to this defendant. However, the parties elect to address at the sentencing hearing any found by the pre-sentence report or Court and agree to be bound by the Court's determination following the sentencing hearing.

    d. The defendant appears to have admitted her guilt and accepted responsibility for her actions, and by timely notifying authorities of the intention to enter a plea of guilty has thereby permitted the Government to avoid preparing for trial and permitted the Government and the Court to allocate their resources efficiently. Therefore, the defendant appears entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines and the Government, at the time of sentencing, will make a motion with the Court to that effect unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and any pretrial release orders; or (2) attempts to withdraw this guilty plea; or (3) violates the law; or (4) otherwise engages in conduct inconsistent with an acceptance of responsibility.[1]

    e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office.

    f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw this plea of guilty.

---

[1] The parties recognize that if the defendant's offense level is determined to be below a level 16, then the maximum acceptance reduction available to the defendant is only two-levels.

g. The United States agrees to request a sentence within the *final* United States Sentencing Guidelines range, after any enhancements or reductions are set by the Court at the sentencing hearing. That request will be based on any good faith sentencing arguments not otherwise in conflict with agreements herein, or the law. The defendant agrees to request any reasonable sentence based on any good faith sentencing arguments not otherwise in conflict with agreements herein, or the law, plus any mandatory minimums or consecutive sentences. The sentencing argument agreements by the parties are not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including a sentence outside the applicable Guidelines range or a consecutive sentence.

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 or other places within this plea agreement, and any admissions made during the defendant's plea colloquy, support the imposition of the agreed-upon Guideline calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea

agreement, the United States may charge, reinstate, or otherwise pursue all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant, or anyone on behalf of the defendant, at the sentencing hearing which might be inconsistent with the provisions of this plea agreement.

    b. comment on the evidence supporting the charges in the indictment.

    c. oppose any arguments and requests for relief the defendant, or anyone on defendant's behalf, might advance on an authorized appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence imposed, even if the Court chooses not to follow any recommendation made by the United States.

    d. oppose any authorized post-conviction motions.

    e. reinstate or file any charges in the event of a violation of this plea agreement, regardless of when that violation occurs.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty.

    b. The right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial.

    c. The right to a jury trial, and at that trial, the right to the effective assistance of counsel.

    d. The right to confront and cross-examine the witnesses who testify against the defendant.

    e. The right to compel or subpoena witnesses to appear on defendant's behalf.

12

Case 4:23-cr-00001-DGK   Document 83   Filed 04/20/23   Page 12 of 18

f. The right to remain silent at trial, in which case that silence may not be used against defendant.

The defendant understands that by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that if she pleads guilty, the Court may ask questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, those answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands she has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights**

   a. The defendant acknowledges, understands and agrees that by her *unconditional* plea of guilty pursuant to this plea agreement she waives the right to appeal or collaterally attack a finding of guilt *or* denial of a motion to withdraw her guilty plea following the acceptance of her plea of guilty pursuant to this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives the right to appeal any sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" is a sentence imposed in excess of the statutory maximum. An "illegal sentence" is *not* a misapplication or miscalculation of the Sentencing Guidelines, an abuse of discretion, the imposition of an unreasonable sentence, or the imposition of a sentence the parties did not request or do not agree with. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal the sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

   c. The defendant further acknowledges that if she violates the waivers set out in a. and b. above, the United States may re-instate or file any charges dismissed or not pursued as part of this plea agreement, regardless of any other language to the contrary in this plea agreement.

13

16. **Financial Obligations.** By entering into this plea agreement, the defendant states an understanding of and agrees to the following financial obligations:

   a. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine or costs.

   b. The defendant will fully and truthfully disclose all assets and property in which defendant has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until the defendant has satisfied the restitution or fine or costs order in full.

   c. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be considered when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

   d. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets, restitution, fines, or costs.

   e. The defendant hereby authorizes the USAO to obtain a credit report pertaining to defendant to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

   f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of **$100.00** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of fulfillment of this obligation at the time of sentencing.

   g. The defendant certifies that no transfer of assets or property has been made for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that no such transfers will be made in the future.

14

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives any and all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant Will Surrender to Custody at the Plea.** The defendant understands that the crime to which she is pleading is an offense for which the Court could detain her pending sentencing. Regardless of her current custody status, the defendant hereby agrees not to contest her detention immediately after the guilty plea, to surrender to the custody of the United States Marshals at that time, and to not attempt release from custody pending sentencing or transfer to the Bureau of Prisons following sentencing if she is so sentenced.

**20. Defendant's Breach of Plea Agreement.** If the defendant violates any conditions of release or fails to appear for sentencing or commits a new criminal offense before sentencing, or if the defendant, prior to or at sentencing, provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or breaches this plea agreement at any time after signing this plea agreement, including after sentencing, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty.

The defendant also understands and agrees that in the event this plea agreement is violated, at any time, including after sentencing, all statements or testimony made by the defendant to the United States Attorney's Office, law enforcement, a grand jury, or any court or tribunal, after the signing of this plea agreement, or any leads from such statements or testimony, shall be admissible against defendant in all criminal proceedings. The defendant waives any rights under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant after this plea agreement is signed.

**21. Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement, including the ramifications of violating this plea agreement after it is signed.

16

The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, or any written supplemental agreement submitted in-camera to the Court as part of this plea agreement, have been made by the United States, the Court, his attorney, or any other party to induce her to enter this plea of guilty.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement as part of this plea agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether that party was involved in drafting or modifying this agreement.

24. **Article III Waiver.** The parties agree to conduct this guilty plea hearing before a magistrate judge if that becomes necessary. While this agreement hereby waives any rights the parties may have to conduct this guilty plea before an Article III judge, the defendant specifically further acknowledges they were informed by their attorney of their right to have this plea hearing conducted in front of an Article III judge. The defendant thereafter made this knowing and voluntary waiver of said right and therefore consents to this plea hearing being conducted before a magistrate judge, should that become necessary.

Teresa A. Moore
United States Attorney

Dated: 4/20/27

_____
Bruce Rhoades
Assistant United States Attorney

I have consulted with my attorney and fully understand all my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and any statutory minimums. I have read this plea agreement and any written supplement to it and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 4-20-23

_____
DAWN LOUISE BRANSTIETTER
Defendant

I am the attorney for defendant DAWN LOUISE BRANSTIETTER. I have fully explained her rights with respect to the offenses charged in the indictment. Further, I have reviewed with her the provisions of the Sentencing Guidelines and any statutory minimum sentences applicable in this case. I have carefully reviewed every part of this plea agreement and any written supplement to it with the defendant. To my knowledge and belief, the decision by DAWN LOUISE BRANSTIETTER, to enter into this plea agreement is an informed and voluntary one.

Dated: 4-20-23

_____
Brady D. Wimer
Attorney for Defendant

18